IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT BUGOS, | } | |
| | } | |
| Plaintiff | } | |
| | } | |
| VS. | } | CIVIL ACTION NO. H-06-0123 |
| | } | |
| RICOH CORPORATION, d/b/a | } | |
| RICOH BUSINESS SYSTEMS, | } | |
| | } | |
| Defendant | } | |

**MEMORANDUM OPINION & ORDER**

In this diversity action, Plaintiff Robert Bugos ("Bugos") alleges that Defendant Ricoh Corporation ("Ricoh") improperly terminated his employment because of gender discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.001 *et seq*. (Vernon 2006).  Pending before the court is Ricoh's motion for summary judgment (Doc. 16).  Bugos filed a response (Doc. 19), to which Ricoh replied (Doc. 20).  Because Bugos has not raised a genuine issue of material fact that gender discrimination led to his employment termination, the court GRANTS Ricoh's motion for summary judgment.

I.      BACKGROUND & RELEVANT FACTS

Ricoh sells copiers, printers, scanners, and other similar office products.  In September 2004, Ricoh Branch Manager Doug Stewart ("Stewart") hired Bugos as a Sales Manager for Ricoh's Houston office.  As a Sales Manager, Bugos oversaw a sales team, or in Ricoh terminology, a "commercial accounts" team.  (*See* Bugos Dep. 39, May 17, 2006, Doc. 16 Ex. A.)  A commercial accounts  team is comprised of "account executives," or sales representatives.  (*Id.* at 42.)  Stewart initially assigned three existing Ricoh account executives to Bugos's team, one of whom was Philip Farmer ("Farmer").  Two months later, Ricoh hired two additional account

executives, Kathy Reynolds ("Reynolds") and Tab Figueiredo ("Figueiredo") and assigned them to Bugos's team.  (*Id.* at 68-69.)  Three more account executives were added in January of 2005.  (*Id.* at 69.)

Bugos's main responsibility was to develop and manage his account executives.  This responsibility included ensuring that his account executives adhered to Ricoh policies.  Ricoh expected its account executives to comport with basic standards of corporate professionalism including, *inter alia*, being punctual and maintaining "corporate hours."  (Account Executive Standards, Doc. 16 Ex. A-11.)  As part of his managerial duties, Bugos was also required to monitor his account executive's compliance with the "50-point plan," a system by which Ricoh assigns point values to specific sales activities with the expectation that account executives obtain 50 points daily.  (Bugos Dep.  65, Doc. 16 Ex. A; *see also* Ricoh Daily Activities Standard, Doc. 16 Ex. A-10.)

Ricoh informed Bugos that his performance would be measured based on the performance of his account executives.  (*Id.* at 74.)  Accordingly, Bugos received a six-month sales goal of $975,000.  (*Id.* at 100.)  After five months of employment and at the time of his termination, Bugos had only reached 22 percent of his sales quota.  (*Id.* at 247.)

In November 2004, Ricoh promoted Dora Lee Brown ("Brown") to Branch General Manager, and Brown became Bugos's immediate supervisor.  (*See* Brown Dep. 10, May 24, 2006, Doc. 16 Ex. B.)  Shortly thereafter, Brown met with Bugos to discuss developing his sales team.  Brown encouraged Bugos to hire more women for his team.  (*Id.* at 157.)  In subsequent conversations with Bugos and others, Brown allegedly made the following comments: "women work harder than men"; "women are better received by the customer than men"; "women have done better at sales at Ricoh than men"; "women are better employees than men"; (David Shapiro ("Shapiro") Stmt., Diana Victoria ("Victoria") Stmt. ¶ 2,  Bugos Aff.  ¶ 1, Doc. 18 Exs. 4-2, 7, & 8 respectively.)

In December 2004, Philip Farmer requested a transfer from Bugos's team.  Farmer's deposition testimony reflects frustration with his placement on an inexperienced team and his

resentment at having to, in his opinion, "train[] a manager and not be[] compensated for it." (Farmer Dep. 87, Jan. 29, 2007, Doc. 19 Ex. 6.)  In a statement written eight months after Bugos's termination, Farmer explained that his transfer request was a direct result of Bugos's ineffective management. (Farmer Stmt., dated Nov. 7, 2005, Doc. 16 Ex. A-42.) Brown approved the transfer. She allegedly informed Bugos that Farmer did not "feel [Bugos] had the experience level or leadership to help [Farmer] grow within the organization." (Brown Email, dated April 12, 2005, Doc. 16 Ex. A-39.)

Nevertheless, Brown and Bugos ambled along amicably until controversy arose regarding another one of Bugos's account executives, Tab Figueiredo.  During his tenure with Ricoh, Figueiredo did not spend much physical time at the office.   Nor did he manage to make a single sale.  By mid-February 2005, Brown had noticed Figueiredo's frequent absences and contacted Bugos about the situation. (*See* Bugos Dep. at 155-56.)  By the end of the week of February 28th, both Bugos and Figueiredo would be fired.  The events of that week are discussed below.

On Monday, February 28, 2005, Brown met with Bugos and Figueiredo to discuss Figueiredo's attendance problem.  (Brown Email, dated March 2, 2005, Doc. 16 Ex. A-27.)  At the Monday meeting, Brown explained her concerns and the importance of fulfilling work hour expectations.  (*Id.*)

Despite the discussion and Brown's verbal warnings, Figueiredo did not show up to work on Tuesday, March 1, 2005.  (*Id.*)  That same day, Brown instructed Bugos to call Figueiredo and demand that Figueiredo be present in the office at 8:00 a.m. on Wednesday.  (*Id.*)  Bugos spoke with Figueiredo at length and, for a variety of reasons, agreed that Figueiredo was being "unfairly treated."  (*Id.*)  In his affidavit, Bugos explained that Figueiredo was having personal problems with his co-worker, Reynolds, that Figueiredo's sales territory was closer to his home, and that the requirement regarding an account executive's physical presence in the office was not uniformly

enforced.  (Bugos Aff. ¶ 2, Doc. 18 Ex. 8.)   Bugos relayed these concerns to Brown, who demanded

that Bugos issue Figueiredo an "action plan" mandating Figueiredo's physical presence in the office

and a warning that failure to do so could result in termination  (*Id*.)  The parties dispute the degree

with which Bugos challenged the plan.  Bugos asserts that he merely offered his opinion that a plan

was unnecessary.  (*Id*.)  Brown felt the need to have Ricoh's human resource ("HR") department

intervene. (Brown Dep.  131-32, Doc. 16 Ex.  B.)  By the end of the day on Tuesday, March 1st,

Bugos agreed to issue Figueiredo the action plan.

On Wednesday, March 2nd, Bugos issued Figueiredo the plan.  (Action Plan, Doc.

19, Ex. 5-1.)  That same day, Brown sent an email to the HR department and to her supervisor,

Stewart, recommending that Bugos be terminated. (Brown Email, Doc. 16 Ex. A-27.)   Brown

discussed her struggle with Bugos on the Figueiredo situation.  (*Id*.)  She also discussed her concerns

more generally about Bugos's performance:

> I have many concerns with [Bugos's] management style. [Bugos] was
> hired to manage and develop a new team, However [sic], he
> continually struggles to develop this team.  Dave Higbie (sales
> manager) developed territory plans for [Bugos] and developed a
> marketing program for [Bugos] and his team.  To date, [Bugos] has
> not utilized the tools Dave developed for [Bugos] and furthermore
> [Bugos] has not pursued the Ricoh, New Hire Development
> techniques for his new reps.  I do not see that [Bugos] has the
> "Leadership" skills to develop a new team.  Without a strong leader
> who can develop these new employees we will not meet our growth
> potential or business goals.  Therefore, it is in the best interest to
> precede with the termination of Robert Bugos.

(*Id*.)  Brown received clearance to proceed with the termination.  (Brown Dep.  at 143, Doc. 16 Ex.

B)

On Thursday, March 3rd, Brown informed Bugos that he was being terminated for

performance-related issues.  (Bugos Dep. 232, Doc. 16 Ex.  A.)  The next day, Figueiredo was

terminated for not being at his desk at 5:00 p.m. (Figueiredo Dep., dated Jan.  29, 2007, 120-121,

Doc. 19, Ex. 5.)  At the time of his termination, Bugos had the lowest sales of any of the Houston sales managers.  (Sales Figures, Oct. 2004 - March 2005, Doc. 16 Ex. A-32.)

Subsequently, Brown replaced Bugos with a female employee, Dianne Foreman. (Shapiro Dep., dated Jan. 24, 2007, 84-85, Doc. 19 Ex. 4.)  Soon thereafter, Brown discussed disciplining one of Bugos's former account executive, Kathy Reynolds, with Foreman.  Brown recommended that Foreman place Reynolds on a performance plan.  (Brown Dep. 17, Doc. 16 Ex. B.)  Foreman disagreed and requested additional time to work with Reynolds.  (*Id*. at 19-20.)  Brown acquiesced and took no discipline action against either Foreman or Reynolds.  (*See id*. at 23.)

In December 2005, Figueiredo filed a charge of gender discrimination with the United States Equal Employment Opportunity Commission ("EEOC").   The EEOC issued a determination letter stating that its "investigation revealed sufficient evidence to establish that [Brown] created an environment that was hostile to males and that females were treated more favorably than males in terms of attendance issues and disciplinary actions." (EEOC Determination, dated Aug. 30, 2006, Doc. 19 Ex. 5-3.)  Although offering testimony on Bugos's behalf, Figueiredo is not a party to the case *sub judice*.

Bugos also filed a charge of gender discrimination with the EEOC and the Civil Rights Division of the Texas Workforce Commission ("TWC").  (Bugos Charge of Discrimination, dated April 1, 2005, Doc. 16 Ex. A-34.)  The EEOC issued a right to sue notice on June 20, 2005, and the TWC issued its notice on September 29, 2005.  (EEOC and TWC Notices, Doc. 16 Exs. 36-37.)  Pursuant to an agreement between the parties, this lawsuit was timely filed against Ricoh on December 6, 2005.  Ricoh removed the case to federal court on diversity of citizenship grounds. Ricoh has since filed for summary judgment on Bugos's claim.

II.     LEGAL STANDARDS

(A)     <u>Summary Judgment</u>

A party moving for summary judgment must inform the court of the motion's basis and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

Once the movant makes this showing, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). The non-movant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19

F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).    Furthermore, the party opposing a motion for summary judgment need not present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir.1988).   The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).   In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

(B)    Gender Discrimination under the TCHRA

Section 21.051 of the Texas Labor Code prohibits, in relevant part, the discharge of an individual on the basis of sex.  TEX. LAB. CODE ANN. § 21.051(1) (Vernon 2006). An "unlawful employment practice is established when the complainant demonstrates that . . . sex . . . was a motivating factor for the employment practice, even if other factors also motivated the practice." *Id.* § 21.125(a). The purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*  TEX. LAB. CODE ANN. § 21.001(1) (Vernon 2006); *Pineda v. UPS*, 360 F.3d 483, 487 (5th Cir. 2004).  Claims brought under the TCHRA can be assessed using "'analogous federal statutes and the cases interpreting them'" as guides.  *Pineda*, 360 F.3d at 487 (citing and quoting *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).  Accordingly, the court employs an analogous Title

VII framework to interpret Bugos's gender discrimination claim under the TCHRA. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (concluding that there is "no meaningful distinction" between the court's analysis under the federal framework and its analysis under the TCHRA); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n.10 (5th Cir. 2001) (same).

This is a gender discrimination case based on circumstantial evidence.[1] It is therefore subject to the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of gender discrimination. *Davis*, 383 F.3d at 316. To establish a *prima facie* case of gender discrimination, Bugos must show the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

If Bugos establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to Ricoh to articulate a legitimate, non-discriminatory reason for its employment action. *See Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Ricoh's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (*citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

---

[1] Bugos agrees that there is no direct evidence of discrimination. (*See* Pl.'s Resp. 5 n.1, Doc. 19.)

If Ricoh articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Id*. (citing *Hicks*, 509 U.S. at 510-511).   Bugos must then introduce evidence creating a jury question as to whether Ricoh was motivated by discriminatory animus.  Plaintiff meets this burden by showing either (1) the defendant's reason were not true but, rather, were a pretext for discrimination, or (2) even if the reasons were true, another motivating factor was the protected characteristic. *Machinchick*, 398 F.3d at 356; *Kokes v. Angelina College*, 148 S.W.3d 384, 393 (Tex. App.–Beaumont 2004, no pet.).   Under either alternative pursuant to Section 21.125(a) of the TCHRA, Bugos need only show that discrimination was a motivating factor, not that it was the sole reason for the employment decision. *Quantum Chem. Corp.*, 47 S.W.3d at 479-80 ("The plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision."); *Pineda*, 360 F.3d at 488, n.4.

Although the intermediate evidentiary burdens shift back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).  In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment. *Id*. at 148-49.

III.     ANALYSIS

Ricoh concedes that Bugos has satisfied the elements of his *prima facie* case: his gender is a protected characteristic; he was qualified for his position; his termination was an adverse employment action; and he was replaced by a female employee, Dianne Foreman.  Bugos, for his

part,  acknowledges that Ricoh has produced a legitimate, non-discriminatory reason for Bugos's termination by claiming Bugos was a failing and ineffective sales manager.  At issue, therefore, is whether Bugos raises a fact question as to whether Ricoh's nondiscriminatory reason was a pretext for gender discrimination.

To demonstrate a fact question as to pretext, Bugos must show that the reason proffered by Ricoh is "false, *and* that discrimination was the real reason."   *See Canchola*, 121 S.W.3d at 740 (quoting *Hicks*, 509 U.S. at 515) (emphasis in the original); *see also Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 576 (Tex.  App.–Houston [14th Dist.]  2004, no pet.).  Bugos argues that the summary judgment evidence shows pretext because (1) similarly-situated female employees were treated more favorably; (2) Ricoh changed its position for termination after the fact; (3) the predicate reasons for his termination are false; (4) Ricoh failed to follow its internal policies regarding termination; and (5) Brown's remarks about women provide an inference of discrimination.  Discussing each argument in turn, the court concludes that there is no genuine issue of material fact that Ricoh's explanation is false and that discrimination was the real reason for Bugos's termination and that summary judgment is appropriate.

1.    Bugos has not shown that similarly-situated female employees were treated more favorably.

Bugos identifies Foreman as a similarly-situated female employee who received more favorable treatment when she disagreed with Brown about Reynold's sales performance.  An employee is "similarly situated" to the plaintiff if their circumstances

> are comparable *in all material respects*, including similar standards, supervisors, and conduct…. Although precise equivalence in culpability between employees is not the ultimate question, the Fifth Circuit has held that to prove discrimination based on disparate discipline, the plaintiff must usually show that the misconduct for which he was discharged was *nearly identical* to that engaged in by [the  other] employee whom [the employer] retained.

*Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917-18 (Tex. 2005) (emphasis added and internal quotations omitted).   Assuming *arguendo* that there was disparate treatment, Bugos and Foreman are distinguishable in several material respects.   First, Foreman had just taken over for Bugos when she spoke with Brown about Reynolds.   Bugos had been struggling with his sales management for over five months.   Second, at the time of Bugos's termination, Foreman was at 126 percent to quota while Bugos was only at 22 percent.   Finally, Foreman was requesting more time to help a sales associate succeed at selling.   Bugos was balking at issuing an action plan to a sales associate unable or unwilling to come into the office on a daily basis.   Foreman is not "nearly identical" to Bugos and cannot, therefore, serve as an adequate basis for comparison.   *See id*. Accordingly, Foreman's actions with respect to Reynolds are not probative of pretext in Bugos's termination.

           2.       Ricoh has not changed its reasons for terminating Bugos's employment.

           Plaintiff also argues that Ricoh's explanation is pretextual because its reasons for firing Bugos changed after his termination.   Bugos directs the court's attention to an email that Brown sent to her supervisors in April 2005 in which she states that Bugos "was not terminated for lack of revenue performance even though he was only 22% of quota."   (Brown Email, dated April 12, 2005, Doc. 19 Ex. 9.)   Thus, claims Bugos, his revenue performance was a pretext for discrimination.

           Bugos fails to mention the very next line of the email in which Brown states, "He was termed because he didn't know how to develop his representatives."   (*Id*.)   The full email further discusses Bugos's poor leadership and his inability to manage his team effectively: Bugos did not implement the Ricoh 50-point plan; he did not incorporate suggestions from other managers like Dave Higbie ("Higbie"); and Bugos was insubordinate in protesting an action plan for Figueiredo. (*See id*.)   Ricoh did not change its position.   It has always maintained that Bugos was released because of his poor performance not only at sales but also in terms of leadership qualities.   *See*

*Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 806 n.2 (according no weight in a retaliation case to an employee's claim that her employer had "constantly changed" its position because "[f]rom the start, [the employer] has cited various examples of poor performance and improper conduct as its reasons for firing [the employee]).  One line drawn out of context from an email is not sufficient evidence of pretext.

> 3.   Factual disputes about Bugos's performance do not preclude summary judgement.

In an effort to defeat summary judgment, Plaintiff alleges there are factual disputes concerning (1) Bugos's implementation of Ricoh's 50-point sales program, (2) Bugos's managerial prowess; and (3) whether Bugos was insubordinate.  A factual dispute about an employee's performance does not typically satisfy Plainitiff's burden of showing pretext. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification."). In other words, "even an incorrect belief that an employee's performance is inadequate" does not preclude summary judgment. *Id*.  Bugos cannot survive summary judgment by merely denying or explaining his alleged deficiencies as a sales manager. *See Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999) (holding that a dispute about work performance "will not necessarily support an inference of pretext").  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1991).  Bugos has not provided any evidence that Brown acted in bad faith or was motivated by anything other than a reasonable belief in Bugos's inability to develop and manage his sales team.  As such, Bugos's attempts to show pretext in this manner do not succeed, and summary judgment is appropriate.

> 4.   Ricoh's alleged failure to follow its internal policies does not preclude summary judgment.

Bugos argues that a fact question regarding pretext exists because Ricoh did not follow its progressive discipline process when it terminated his employment. The court disagrees for two reasons. First, a fact question regarding pretext does not automatically arise from an employer's disregard of its own policies and procedures. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 581 n.3 (5th Cir. 2003) (citing *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996). Second, there is no evidence that Ricoh did violate its policies and procedures when it terminated Bugos. In his response to Ricoh's motion for summary judgment, Bugos attaches three policy statements from Ricoh's HR department: the termination policy; the disciplinary action policy; and performance improvement policy. (*See* Ricoh Policies, dated Jan. 1, 2004, Doc. 19 Ex. 11.) The termination policy states that a "discharge for unsatisfactory job performance may occur only after the supervisor/manager has complied with Ricoh's policy regarding" performance improvement. (*Id.*) The performance improvement policy is a graduated discipline program in which written warnings precede termination. (*Id.*) Nevertheless, the performance improvement policy specifically allows managers and supervisors to deviate from the normal disciplinary course: "Depending on the individual circumstances and the time frame involved, it may be appropriate to bypass one or more steps of this policy." (*Id.*) Thus, Brown did not violate any of these policies when she declined to issue a performance improvement plan to Bugos. It was in her discretion to bypass the typical disciplinary procedure. The termination policy's only mandatory requirement is that supervisors discuss termination decisions with the HR department and others prior to terminating an employee. (*Id.*) Brown complied with this requirement. (*See* Brown Email, Doc. 16 Ex. A-27.)

5.      Brown's remarks do not preclude summary judgment.

Workplace remarks can suffice as circumstantial evidence of discriminatory intent. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000). Nevertheless, these remarks are not probative if they are the only evidence of pretext. *See Palasota v. Haggar Clothing*

*Co.*, 342 F.3d 569, 577 (5th Cir. 2003).  Given the preceding analysis, Brown's remarks are all that remain of Bugos's evidence of pretext and, standing alone, would not permit a reasonable jury to find that gender discrimination motivated Bugos's termination.  As such, summary judgment is appropriate.

IV.    CONCLUSION

It is well established that the trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so.  *EEOC v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44 (5th Cir.1995) (citing *Elliott v. Group Medical and Surgical Serv.*, 714 F.2d 556, 562 (5th Cir.1983)).  Bugos has not provided enough evidence to support a reasonable inference that Ricoh's reasons were false and that gender discrimination was the true reason.  Accordingly, it is hereby

**ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

**SIGNED** at Houston, Texas, this 14th day of August, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE